829 So.2d 371 (2002)
Brett LYNCH, Appellant,
v.
STATE of Florida, Appellee.
No. 4D01-3058.
District Court of Appeal of Florida, Fourth District.
November 6, 2002.
*372 Carey Haughwout, Public Defender, and Ian Seldin, Assistant Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Monique E. L'Italien, Assistant Attorney General, West Palm Beach, for appellee.

ON MOTION FOR CLARIFICATION
HAZOURI, J.
We grant the appellee's motion for clarification, withdraw our previously filed opinion, Lynch v. State of Florida, No. 4D01-3058 (Fla. 4th DCA Sept. 18, 2002), and substitute the following.
Brett Lynch was charged by information with aggravated fleeing and eluding (count I) and grand theft of a motor vehicle (count II). He appeals his conviction, arguing the trial court erred when it denied defense counsel's request for a special jury instruction regarding the law on the status of an after acquired passenger of a stolen motor vehicle and in giving the standard jury instruction.
David Stewart, the victim, testified that on December 28, 2000, he arrived home in his black Thunderbird at approximately 4 A.M. After he stepped out of his car, a man came up behind him with a gun and drove off in his Thunderbird. The man had a bandana around his face, but Stewart observed that he was a black male wearing a white shirt and blue jeans. Stewart called 911 and gave a description of his vehicle and what occurred. During cross-examination, he testified that he did not see any individual, other than the assailant, enter his car when it was stolen.
Officer Torres was on road patrol when he observed a Thunderbird, which Stewart later identified as his stolen vehicle. *373 There were two occupants in the Thunderbird. Officer Torres pursued the Thunderbird to initiate a traffic stop and Deputy Dingman followed in his patrol vehicle. A police chase ensued and the driver of the Thunderbird lost control, sending the Thunderbird up an embankment, flipping over and eventually landing on all four wheels. While the Thunderbird was flipping over, a man jumped or fell out of the passenger's side of the vehicle. Officer Torres described the passenger as a bald black male, wearing a red jacket and black shorts. Deputy Dingman described the passenger as a black male, 5 feet 8 inches tall, 150-60 pounds, wearing a red jacket or red shirt.
Deputy Dingman testified that the Thunderbird continued into the main road and he pursued. The Thunderbird eventually crashed into a fence. Deputy Dingman positioned his vehicle along the driver's side of the Thunderbird so that the driver could not exit. The driver exited through the passenger side and turned with his hand on his waist as if he were reaching for a gun. Deputy Dingman took cover behind his vehicle and the driver ran away. Deputy Dingman called dispatch and described the driver as a medium complexion black male, mid-twenties, approximately 6 feet tall, wearing a grayish shirt, black pants or long shorts and a dark knit wool cap.
Officers proceeded to set up a perimeter around the two block area in order to box in the driver. Police recovered a black leather jacket where Lynch was later seen jumping over a fence and a grey and white striped shirt was found not far from the jacket. Deputy Sprouse searched the perimeter with a K-9 that picked up the scent of the driver. The K-9 led him to Lynch who was wearing red shorts and no shirt. Lynch was apprehended two blocks from where the driver exited the Thunderbird. Deputy Dingman identified Lynch on the scene and in court as the driver. Deputy Dingman noted that Lynch was dressed differently when he was apprehended, but that he identified him by his face.
Detective Vaccaro questioned Lynch at the police station after reading him his Miranda rights. Lynch stated that he did not do the carjacking, that his friend did the carjacking without him knowing and then picked him up. Lynch further stated that at some point he started driving, but that he did not know the vehicle was stolen. Lynch stated that it was his friend, who "bailed out" or jumped out during the car chase. Lynch offered to tell him who his friend was in exchange for being let out of jail. After Detective Vaccaro responded that he could not make any deals, Lynch refused to talk any further or answer questions. During cross-examination, Detective Vaccaro admitted that Lynch gave him the name of Brian Wilson but his photograph was never shown to Detective Dingman or Officer Torres. Detective Vaccaro further testified that Lynch stated that the person he was with jumped out of the car from the passenger's side and so he assumed that Lynch was the driver. Detective Vaccaro admitted that he did not know that both men exited the car from the passenger side. Detective Vaccaro emphasized that everything Lynch stated was to the effect that he was not present during the carjacking and only got into the vehicle after the car was taken.
Defense counsel requested a special jury instruction, as follows: "Mere presence in a vehicle as an after acquired passenger, with knowledge that it has been stolen, is insufficient to convict for the charge of Grand Theft." The trial court determined that the standard jury instruction was sufficient and the requested instruction was not necessary.
*374 During closing argument, defense counsel argued that the case was about whether or not Lynch drove the car and whether he knew the car was stolen. He argued that it was Lynch who Officer Torres and Deputy Dingman saw jump out or fall out of the car as it was flipping over and that he was not the driver. He further argued that the man who actually did the carjacking went to pick Lynch up and that Lynch was merely a passenger that did not know anything about the carjacking.
The trial court instructed the jury with regard to the charge of grand theft as follows:
Before you can find the defendant guilty of grand theft of a motor vehicle, the State must prove the following two elements beyond a reasonable doubt.
Element number oneexcuse me, the following three elements beyond a reasonable doubt.
Element number one, the defendant knowingly and unlawfully used or endeavored to use the motor vehicle of David Stewart.
Number two, he did so with the intent to either temporarily or permanently deprive David Stewart of his right to the property or any benefit from it or to appropriate the property of David Stewart to his own use or to the use of any person not entitled to it.
Element number three, the property was a motor vehicle.
Proof of possession of recently stolen property, unless satisfactorily explained, gives rise to an inference that the person in possession of the property knew or should have known that the property had been stolen.
Obtains or uses means any manner of taking or exercising control over property or making any unauthorized use, disposition or transfer of property.

Endeavor means to attempt to try.
Lynch contends that the trial court abused its discretion in denying defense counsel's requested instruction: "Mere presence in a vehicle as an after acquired passenger, with knowledge that it has been stolen, is insufficient to convict for the charge of Grand Theft." See State v. G.C., 572 So.2d 1380 (Fla.1991), receded from on other grounds, I.T. v. State, 694 So.2d 720 (Fla.1997).
In G.C., a juvenile accepted a ride from a friend driving a stolen car. Id. at 1380. In a post-arrest statement, G.C. indicated that upon entering the car, he suspected that it had been stolen because of the broken steering column. The record revealed that the driver stole the car and retained absolute control over it until his arrest. Id. The supreme court noted that the omnibus theft statute, section 812.014, requires a finding of specific intent to either (a) "deprive" the other person of a right to the property or a benefit therefrom or (b) "appropriate" the property to his own use or to the use of any person not entitled thereto. Id. at 1382. The court reasoned that "a mere passenger in a vehiclewho has not exercised such possession, dominion, or control over the vehicle as to indicate an intent to participate in the "taking" of that vehiclecannot be convicted of theft because there is insufficient proof of the specific criminal intent required by statute." Id. The court held that "mere presence as an after-acquired passenger in a vehicle, with knowledge that it has been stolen, is insufficient to convict a person of theft under section 812.014." Id.
With regard to a defendant's request for a special jury instruction, the Florida Supreme Court has stated:
While a defendant is entitled to have the jury instructed on his theory of defense, the failure to give special jury *375 instructions does not constitute error where the instructions given adequately address the applicable legal standards. See Palmes v. State, 397 So.2d 648 (Fla. 1981). The trial court in the instant case gave the standard jury instructions for first-degree felony murder. The standard jury instructions are presumed correct and are preferred over special instructions. See State v. Bryan, 290 So.2d 482 (Fla.1974). Thus, Stephens has the burden of demonstrating that the trial court abused its discretion in giving standard instructions. See Phillips v. State, 476 So.2d 194 (Fla. 1985); Williams v. State, 437 So.2d 133 (Fla. 1983).
Stephens v. State, 787 So.2d 747, 755-56 (Fla.2001).
In order to be entitled to a special jury instruction, a defendant must prove: (1) the special instruction was supported by the evidence; (2) the standard instruction did not adequately cover the theory of defense; and (3) the special instruction was a correct statement of the law and not misleading or confusing. Id. at 756.
In this case, the special jury instruction was supported by the evidence. As the State asserts, Officer Dingman identified Lynch as the driver of the stolen motor vehicle. However, as defense counsel argued in closing argument, there was evidence that Lynch was merely a passenger in a previously stolen vehicle. The victim testified that only one person was present when his vehicle was stolen. The description of the man who stole the vehicle and was driving the vehicle more closely resembles that of the other man in the vehicle than that of Lynch. Detective Vaccaro testified that Lynch stated that he did not steal the motor vehicle. While he also testified that Lynch stated he was driving the vehicle during the police chase, during cross-examination he admitted that he assumed Lynch was driving because Lynch stated that the man who stole the motor vehicle "bailed out" from the passenger side and he was not aware that both men exited the vehicle from the passenger side.
As there was evidence from which to argue that Lynch was merely a passenger of a previously stolen vehicle, the special instruction was supported by the evidence. See Wright v. State, 705 So.2d 102, 104 (Fla. 4th DCA 1998) ("A defendant is `entitled to a jury instruction on his theory of the case if there is any evidence to support it,' no matter how flimsy that evidence might be."); Vazquez v. State, 518 So.2d 1348, 1350 (Fla. 4th DCA 1987).
Next, we address whether the standard jury instruction adequately covers the theory of defense. The standard jury instruction does not inform the jury that mere presence as a passenger in a vehicle after it was stolen, with knowledge that it was stolen, is insufficient to find a defendant guilty of theft. The term "unlawfully used" is not defined or otherwise explained in the instruction. Using a vehicle might be interpreted as including riding in a vehicle as a passenger. Thus, a jury applying the standard jury instruction may find a person who is a mere passenger guilty of theft of the motor vehicle. Further, as Lynch argues, the language: "Proof of possession of recently stolen property, unless satisfactorily explained, gives rise to an inference that the person in possession of the property knew or should have known that the property had been stolen," might be interpreted to mean that a passenger's mere presence in a stolen vehicle gives rise to an inference that the passenger knew it was stolen and hence is guilty of the offense. Therefore, the Standard Jury Instruction does not adequately cover the theory of defense.
*376 Third, the instruction closely parallels the supreme court's holding in G.C.; thus, it is a correct statement of the law. The term "after acquired passenger" might be more clearly revised to state "passenger of a previously stolen vehicle" or "passenger after a vehicle was stolen." Nevertheless, the instruction as a whole is not misleading or confusing.
As the three prerequisites entitling Lynch to his requested special jury instruction are met, the trial court abused its discretion when it denied the request for the instruction. Nevertheless, the error was harmless beyond a reasonable doubt. The jury found Lynch guilty of aggravated fleeing and eluding (count I). In order to have found him guilty of that charge, the jury must have determined that he was "operating a vehicle upon a street or highway in Florida," the first element of that offense pursuant to the Standard Jury Instruction given to the jury. Since the jury determined that Lynch was the driver and not a mere passenger, the failure to grant the special jury instruction for a mere passenger on the grand theft charge was harmless beyond a reasonable doubt.
AFFIRMED.
WARNER, J. concurs.
GROSS, J., concurs specially with opinion.
GROSS, J., concurring specially.
I concur in the result.
I disagree with the majority's contention that the standard jury instruction on grand theft does not adequately cover the theory of defense in this case. The standard instruction adequately covers a grand theft auto case where a defendant claims that he was an after acquired passenger with knowledge that the car had been stolen. As the majority points out, the standard instruction defines "uses" as "any manner of taking or exercising control over property." With the standard instruction, such a defendant would still be able to argue that he did not "knowingly... use" the car within the meaning of the statute. It should be the rare case where a trial judge is reversed for not departing from the standard instructions.